## FRANCHISE.

### Thompson *v.* People, 23 Wend. 537.
#### In S. Ct. 21 Wend. 235.

*Franchise ; Toll ; Quo Warranto ; Pleading ; Verdict.*

In this case, the Supreme Court held, that on an information in the nature of *quo warranto* filed against *individuals* calling upon them to show by what warrant they exercised the franchise of maintaining a bridge across a *navigable river* and exacting *toll* from passengers, and the defendants answer that they do so by virtue of an act of the legislature, authorizing the erection of a bridge in a *specific form*, with an opening drawbridge of a specified width, and that they have in all respects, conformed to the requirements of the act granting the franchise ; if on this allegation as to conformity to the terms of the grant, issue is taken and found against them by the jury, *judgment of ouster follows of course*. The court will not in such case deem the verdict imperfect because the jury have not found that the *variation*

or *departure* from the requirements of the statute, was in a *material* point, or that it was the wanton act of the grantees, or *that it was productive of injury to the public.* If any *excuse* existed proper for the consideration of the jury or the court, which might have produced a different or more favorable result to the defendants, it was held that they should have alleged it by way of pleading, and placed it upon the record, so that the court might have passed upon its sufficiency; but where the defendants placed their defence upon a *strict compliance* with the requirements of the statute, creating the franchise, and there was no exception taken as to the rejection of evidence or to the charge of the judge, the court refused to make any intendments in favor of the defendants."

The Supreme Court further held, that this was not a *private franchise* but one of a *public nature*, in which the public at large had an interest; and that an information in the nature of a quo warranto might be filed in the name of the people, on the relation of any aggrieved citizen; that in a case of this kind a quo warranto or information in the nature of a quo warranto was the appropriate remedy; and that it was not taken away by the fact that a *bond* had been executed to the state as a security for the faithful performance of the conditions upon which the grant was made; such bond being merely cumulative.

It was further held, that although the bridge was built in conformity to the requirements of the act granting the franchise, and so continued for the space of 29 years, still it appearing that for 10 years subsequent to that period, the grantees had failed to comply with such requirements; that the conditions prescribed were continuing conditions; that the bridge was to be so *maintained* as well as *erected ;* therefore the non-compliance was a *misuser*, and the defendants had incurred a forfeiture of the franchise.

The Court of Errors held, however, that as the *plea* of the defendants alleged, that they had in all respects conformed to the requirements of the act, and set forth particularly, *" that they had left an opening* between the centre arches of the bridge, of the width of 25 feet, for the passage of vessels," and the Attorney General had replied *" that a bridge was not built between the centre arches whereof, there was and*

*hath been and is an opening of not less than twenty-five feet*, and the jury instead of finding the defendants "*guilty of unlawful holding or exercising the franchise*," found, "*that since the year* 1825, *there was not an opening between the centre arches of the width of twenty-five feet, but that at all times since* 1825, *the opening was of less width than twenty-five feet* :—"

The Court of Errors held, that the verdict was *imperfect*, that from the finding of the jury, it did not *necessarily follow that a cause of forfeiture* existed, as it did not appear but that this *diminution in width* was wholly immaterial in respect to the object for which the opening and drawbridge were required; nor that any private or public injury had resulted from the diminution; nor but that there had been a *substantial performance* of the conditions upon which the grant was made, which is all that can be required in the performance of a *condition subsequent*, and accordingly the court *reversed* the judgment of the Supreme Court, and awarded a *repleader*.

In the other points above stated, as decided by the Supreme Court, its decision was not disturbed.

───────────

☞ The President of the senate (Bradish,) the Chancellor and 8 senators were in favor of affirming the judgment of the Supreme Court, but 11 senators voted to reverse and award the repleader, which was accordingly done by a majority of one only.

Quere? It would seem that the replication of the Attorney General should have set forth particularly the diminution of the width, and have averred that the diminution was material; that private and public injury had resulted from it, and have negatived the *substantial* performance of the requirements of the act?

The order entered after judgment of reversal, proceeds, " and it appearing to the court that the *plea* of the plaintiffs in error in the court below, and the issue therefore joined, which has been found for the plaintiff below, *does not determine the right* and that no judgment therefore *should* be given upon the verdict aforesaid, it is further ordered and adjudged that the *said parties do replead*, that is to say that

the plaintiffs in error answer anew to the information in regard to the said issue, and that they proceed, &c., until an issue or issues of law, or fact be duly joined.

---

# FRAUDULENT CONVEYANCE.

Phœnix v. Dey, Taylor, and another, assignees of Ingraham, a bankrupt, 5 J. R. 412–430.

*Fraudulent Preference by Insolvent Debtor in alleged Contemplation of Bankruptcy.*

Appeal from the Court of Chancery. About the beginning of October, 1800, Ingraham the bankrupt became insolvent, and expressed his inability to pay his notes, which were protested for non payment. After his public declaration of his inability, he in October, November and December, 1800, made several assignments to individual creditors of lands, effects, and debts, and in particular he conveyed to the appellant, Phœnix, who was his father in law, lands, debts, and promissory notes, to a considerable amount.

A commission of *bankruptcy* issued against Ingraham, in 1801, under the United States act of bankruptcy then existing, and the respondents, Dey, &c., were appointed assignees, and received an assignment of the bankrupt's estate, in trust for his creditors. They, alleging that all the previous transfers, payments and assignments to the appellant, were made after I.'s known insolvency, when he had either committed or contemplated an act of bankruptcy, and were made with an intention to give the appellant an illegal preference, filed their bill for a general discovery, for an account, and for general relief against the appellant, and Ingraham and his wife.

The appellant in his answer. admitted the assignments, payments, &c., made to him, but denied that Ingraham committed an act of bankruptcy until February, 1801, and that